UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
COLLEEN EDWARDS,

                        Plaintiff,                    **OPINION AND ORDER**

        -against-                                   12 Civ. 8442 (JCM)

ESSAM KHALIL, individually,
RAMON BETHENCOURT, individually,
GREGORY METAKES, individually,
JOHN EWANCIW, individually,
JOSEPH DeSTEFANO, individually,
EDWARD CUMMINGS, individually,
GENE T. VIGNOLA, individually,
MELISSA McCAREY, individually,
DAVID GREEN, individually, and
THE CITY OF MIDDLETOWN, New York,

                        Defendants.
------------------------------------------------------X

        On May 13, 2016, defendants Essam Khalil ("Sergeant Khalil"), Ramon Bethencourt ("Chief Bethencourt") and the City of Middletown, New York ("City of Middletown") (collectively, "Defendants") moved for partial reconsideration or reargument under Local Rule 6.3 of this Court's Opinion and Order dated March 31, 2016 (the "Opinion"), which granted in part and denied in part Defendants' motion for summary judgment. (Docket No. 85).[1] Plaintiff Colleen Edwards ("Plaintiff") opposes the motion. (Docket No. 87). For the reasons that follow, Defendants' motion is denied.

## I. LEGAL STANDARD

        "The decision to grant or deny [a motion for reconsideration under Local Rule 6.3] is within the sound discretion of the . . . court." *Dellafave v. Access Temporaries, Inc.*, No. 99 CIV.

---

[1] Former defendants Gregory Metakes, John Ewanciw, Joseph DeStefano, Edward Cummings, Gene T. Vignola, Melissa McCarey, and David Green were dismissed pursuant to the Opinion. (Docket No. 76).

6098(RWS), 2001 WL 286771, at *1 (S.D.N.Y. Mar. 22, 2001) (citation omitted).  In the Second Circuit, granting reconsideration "is an *extraordinary remedy* to be employed *sparingly* in the interests of finality and conservation of scarce judicial resources." *Peterson v. Home Depot U.S.A., Inc.*, No. 11 Civ. 5747(ER), 2014 WL 1355622, at *1 (S.D.N.Y. Apr. 4, 2014) (emphasis added) (quotation marks and citation omitted).  The movant may not use the motion "to start a new round of arguments," nor "should the Court be expected to wade through lengthy papers that simply reiterate in slightly different form the arguments already made in the party's original papers." *Metro. Opera Ass'n, Inc. v. Local 100*, No. 00 Civ. 3613, 2004 WL 1943099(LAP), at *2 (S.D.N.Y. Aug. 27, 2004) (quotation marks and citation omitted).  In sum, the standard for granting a motion for reconsideration "is strict." *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  "[T]he movant must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion." *Dellefave*, 2001 WL 286771, at *1 (citations omitted); *see also Shrader*, 70 F.3d at 257.

## II. DISCUSSION

The Court assumes the parties' familiarity with the facts of this case.  Defendants seek the Court's review of the portions of its previous ruling that denied Defendants summary judgment on Plaintiff's claims for: (i) gender discrimination and retaliation against the City of Middletown under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e to 2000e-17) ("Title VII"), 42 U.S.C. § 1983 ("Section 1983"), and the New York Human Rights Law (N.Y. Exec. Law § 290-301) ("NYHRL"); (ii) gender discrimination against Sergeant Khalil under Section 1983 and the NYHRL; and (iii) retaliation against Sergeant Khalil and Chief Bethencourt (together, the "Individual Defendants") under Section 1983 and the NYHRL.  (Docket No. 86).

Defendants raise the following arguments in support of their motion: (i) there is no basis from which to infer Sergeant Khalil's retaliatory intent, (Motion[2] at 1-4); (ii) Sergeant Khalil did not request specific discipline in June 2011 or October 2011, (*id.* at 5); (iii) there is no evidence that Chief Bethencourt harbored unlawful animus, (*id.* at 5-7); (iv) there is no evidence to support a causal link between Plaintiff's protected activity and Sergeant Khalil's alleged requests for discipline, (*id.* at 7-8); (v) intervening events break any possible causal link between the Individual Defendants' alleged animus and Plaintiff's injuries, (*id.* at 9-16); (vi) Plaintiff has not presented sufficient evidence to overcome the weight of the decision by the City of Middletown Board of Police Commissioners (the "Board") to terminate Plaintiff, (*id.* at 17-18); and (vii) Plaintiff's comparators do not support her claims, (*id.* at 18-22).

Plaintiff responds generally that the crux of Defendants' motion consists of arguments that the Court already considered and rejected, as well as improper assertions of new theories that Defendants did not present in their underlying summary judgment motion. (Opp.[3] at 1). In particular, Plaintiff contends that: (i) there is ample evidence in the record that Sergeant Khalil acted with retaliatory intent, (*id.* at 2-6); (ii) there is sufficient evidence of Chief Bethencourt's retaliatory animus, (*id.* at 6-8); (iii) there are no intervening events breaking the causal link between the Individual Defendants' animus and Plaintiff's injuries, (*id.* at 9-15); and (iv) Defendants' remaining arguments are meritless, (*id.* at 15-19).

The Court agrees with Plaintiff that the majority of Defendants' motion merely rehashes disputed facts or asserts new arguments not previously presented in their underlying motion.

---

[2] Refers to Memorandum of Law in Support of Defendants' Motion Pursuant to Local Rule 6.3 for Reconsideration or Reargument. (Docket No. 86).

[3] Refers to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Reconsideration or Reargument. (Docket No. 87).

3

Defendants' motion fails for this reason alone. Moreover, the Court also finds that Defendants' new arguments lack merit. The Court will group Defendants' similar arguments together and analyze each in turn.

### A. Sergeant Khalil's Retaliatory Intent

Defendants argue that the Court erred in finding that Plaintiff established the fourth element of her Title VII retaliation claim—a causal connection between Plaintiff's protected activity and any adverse employment actions—because there is no basis in the record from which to infer that Sergeant Khalil acted with retaliatory intent. (Motion at 1-4).

Defendants advance several theories in support of this argument. First, Defendants assert that the "temporal proximity" of Sergeant Khalil's March 12, 2011 memorandum to Plaintiff's March 2011 complaint cannot establish Sergeant Khalil's retaliatory intent because: (i) Sergeant Khalil wrote the March 12, 2011 memorandum pursuant to a March 9, 2011 directive from his superior, former defendant John Ewanciw ("Lieutenant Ewanciw"); (ii) the reason Sergeant Khalil's March 12, 2011 memorandum documented multiple incidents, including incidents that occurred over a year before, is that Lieutenant Ewanciw directed Sergeant Khalil to respond to Plaintiff's complaint regarding those incidents; and (iii) the March 12, 2011 memorandum merely requests a "formal investigation" into Plaintiff's conduct and does not contain a request that Plaintiff be disciplined. (Motion at 1-5). Second, Defendants state that Sergeant Khalil's June 2011 and October 2011 memoranda do not contain any requests for discipline. (*Id.* at 5). Third, Defendants claim that, because Plaintiff cannot rely on temporal proximity to establish an inference of retaliation, Plaintiff must point to other evidence that Sergeant Khalil was aware that Plaintiff complained about the 2008 sexual advance, and the record is devoid of any such evidence. (*Id.* at 7-8).

In making these assertions, Defendants do not raise any factual matters that the Court overlooked in its previous ruling. Defendants cite two Second Circuit cases, *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834 (2d Cir. 2013) and *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111 (2d Cir. 2000), in support of their argument that Sergeant Khalil's purported lack of knowledge that Plaintiff complained about the alleged 2008 sexual advance "undercuts a claim of a causal connection" between Plaintiff's protected activity[4] and any adverse employment actions. (Motion at 8). However, these two cases do not compel a finding that Plaintiff's Title VII retaliation claim fails. First, *Zann Kwan* supports the Court's ruling that the temporal proximity of Sergeant Khalil's purported retaliation to Plaintiff's complaint can establish the requisite causal connection. *See Zann Kwan*, 737 F.3d at 844 n.4 (2d Cir. 2013) ("while [defendant] is correct that [plaintiff] cannot satisfy the causation prong through mere corporate knowledge . . . *[plaintiff] demonstrates causation indirectly by the temporal proximity between her complaint and her termination*") (emphasis added). Second, while it is true that "[t]he lack of knowledge on the part of particular *individual agents* is admissible as some evidence of a lack of a causal connection, countering plaintiff's circumstantial evidence of [temporal] proximity," *Gordon*, 232 F.3d at 117, the Court finds that Sergeant Khalil's knowledge of any protected activity and when he gained that knowledge is a disputed issue of fact for the jury to weigh at trial.

Therefore, the Court's ruling on Plaintiff's Title VII retaliation claim stands.

---

[4] In referring to Plaintiff's "protected activity," Defendants only mention Plaintiff's alleged complaint regarding the 2008 sexual advance. However, the Court held that reasonable jurors could disagree about whether several of Plaintiff's verbal complaints in March 2011—not just her complaint about the 2008 sexual advance—constituted protected activity. (*See* Opinion at 57).

## B. Chief Bethencourt's Retaliatory Intent

Defendants also argue that there is no basis from which to infer that Chief Bethencourt acted with retaliatory intent. In particular, Defendants argue that: (i) it would be irrational for a jury to find that Chief Bethencourt's alleged hostility was related to Plaintiff's purported protected activity if Plaintiff's attorney did not even know about the 2008 sexual advance in July 2011; (ii) former defendant Gregory Metakes ("Lieutenant Metakes") asked Plaintiff during a June 2011 meeting "if there was anything else that had occurred that she needed to tell [them] about" and Plaintiff "indicated that there was nothing else going on;" (iii) Chief Bethencourt testified that Plaintiff never mentioned the 2008 sexual advance to him in 2011; and (iv) the only fair inference from the record is that Lieutenant Ewanciw is confused about when he learned of the 2008 sexual advance. (Motion at 5-7). In sum, Defendants argue, there is no sustainable testimony that Chief Bethencourt learned of the 2008 sexual advance prior to April 2012, when Plaintiff filed her charge of discrimination with the Equal Employment Opportunity Commission. (*Id.* at 7).

In making these arguments, Defendants do not cite any case law—let alone controlling decisions—or raise any factual matters that the Court overlooked in its previous ruling. Therefore, the Court declines to reconsider its previous decision on this issue. Moreover, these issues are genuine disputes of material fact to be decided by the jury.

## C. Intervening Events Between Plaintiff's Protected Activity and the Adverse Employment Actions

Defendants further assert that, even assuming *arguendo* that the Individual Defendants acted with discriminatory or retaliatory animus, a number of intervening events break the causal chain between that animus and Plaintiff's injuries.

Two of Defendants' arguments merit little discussion. First, Defendants state that Chief Bethencourt's March 25, 2011 letter (which informed Plaintiff that her allegations against Sergeant Khalil were being classified as "Unfounded") included an offer to discuss her allegations further with Chief Bethencourt and "a representative from the Middletown PBA," (Nicaj Aff.[5] Ex. 19), and that Plaintiff's failure to avail herself of this opportunity breaks the causal chain between her protected activity and any adverse employment actions, (Motion at 9-10). Second, Defendants argue that the April 6, 2012 "warrant check" incident, which did not involve Sergeant Khalil, was a superseding event leading to Plaintiff's termination. (*Id.* at 12-14). As to these incidents, Defendants have failed to identify any factual matters or controlling law that the Court overlooked and the Court will not reconsider its previous ruling.

The Court, nonetheless, will analyze Defendants' three additional arguments about intervening events in further detail.

**i. Recommendations by Lieutenant Ewanciw and Lietuenant Metakes**

Defendants assert that Lieutenant Ewanciw and Lieutenant Metakes' unbiased recommendations to discipline Plaintiff "negate any inference that an unlawful animus informed [Chief] Bethencourt's decisions to seek Plaintiff's discipline in July and December 2011." (Motion at 10-11). Defendants cite *Volat v. City of New York*, 633 F. App'x 74 (2d Cir. 2016) (summary order) in support of this proposition, stating that the "plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were *false*, and that more likely than not [retaliation] was the real reason for the employment action." *Volat*, 633 F. App'x at 75 (emphasis

---

[5] Refers to the Affirmation of Drita Nicaj in Opposition to Defendants' Motion for Summary Judgment. (Docket No. 59).

added) (alteration in original) (*quoting Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2nd Cir. 2000)).

*Volat* is a Second Circuit summary order, which Defendants are reading narrowly, and they fail to consider other Second Circuit decisions. The Second Circuit has made clear that Plaintiff need not show that the Defendants' proffered reasons were untrue or that there was no valid basis for discipline. *Cf. Fields v. New York State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 121 (2d Cir. 1997) (noting in the discrimination context that "[t]hough there are sentences in some opinions to the effect that a Title VII plaintiff must prove '*both* that the [defendant's proffered] reason was false, *and* that discrimination was the real reason,' these decisions do not require a finding of pretext in addition to a finding of discrimination") (alteration in original); *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995) (noting in the discrimination context that "the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors.").

Here, Plaintiff must show that retaliation was a "but-for" cause of the adverse employment actions—not that retaliation was the *only* cause of the adverse employment actions. *See Zann Kwan*, 737 F.3d at 846 ("The Supreme Court recently held that a plaintiff alleging retaliation in violation of Title VII must show that retaliation was a 'but-for' cause of the adverse action . . . . *'but-for' causation does not require proof that retaliation was the only cause of the employer's action*, but only that the adverse action would not have occurred in the absence of the retaliatory motive.") (emphasis added); *see also Broich v. Inc. Vill. of Southampton*, 462 F. App'x 39, 46 n.4 (2d Cir. 2012) (summary order) ("That the [police department] had sufficient

8

justification to bring charges against [plaintiff] does not resolve the question of whether they would in fact have brought the charges in the absence of retaliatory animus."); *DeCintio v. Westchester Cty. Med. Ctr.*, 821 F.2d 111, 116 n.8 (2d Cir. 1987) ("In the event, however, that appellees were motivated by retaliatory animus in instituting the Section 75 proceeding, Title VII would be violated even though there were objectively valid grounds for the proceeding and the resulting discharge."). Plaintiff has met her burden here because a reasonable juror could conclude that Chief Bethencourt acted with retaliatory intent and that retaliation was the "but-for" cause of the adverse employment actions. (Opinion at 60, 62). Accordingly, Defendants' argument fails.

### ii. Plaintiff's Acceptance of Her Three-Day Suspension in July 2011

Defendants next argue that Plaintiffs' acceptance of the three-day suspension in July 2011 is an intervening cause of any injury she claims as a result of that suspension. (Motion at 11-12). In support of this proposition, Defendants cite one non-controlling decision, *Barmapov v. Barry*, No. 09-CV-03390 (RRM)(RML), 2011 WL 32371, at *6 (E.D.N.Y. Jan. 5, 2011). The Court finds Defendants' argument unpersuasive.

In *Barmapov*, the court granted the defendant's motion to dismiss the plaintiff's Section 1983 claim for denial of his right to a fair trial on the grounds that "[p]laintiff's decision to plead guilty constitutes an independent, superseding cause of his conviction and incarceration." *Barmapov*, 2011 WL 32371, at *6. Defendants do not cite any case law indicating that this standard applies in the employment discrimination context. Further, even in cases involving a plaintiff's arrest, the Second Circuit has suggested that the chain of causation should not be considered broken "where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an 'independent' decision that results in a deprivation of liberty." *Zahrey v. Coffey*,

9

221 F.3d 342, 352 (2d Cir. 2000); *see also, e.g.*, *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 162 (S.D.N.Y. 2009) ("Of course, where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an independent decision that results in [harm to the victim], . . . the chain of causation [will] not be considered broken.") (alterations in original) (quotation marks omitted).

Even if the *Barmapov* standard applied in the employment discrimination context, Defendants' argument would fail because a reasonable juror could find that Plaintiff's decision to accept the three-day suspension was a reasonably foreseeable consequence of the Individual Defendants' actions.

### iii. The Board's Decision to Terminate Plaintiff

Defendants similarly argue that the Board's decision to terminate Plaintiff is a "superseding cause of any damages . . . Plaintiff may have sustained as a result of that determination." (Motion at 14-16). In making this proposition, Defendants rely on *Jeffries v. Harleston*, 52 F.3d 9 (2d Cir. 1995) and *Taylor v. Brentwood Union Free Sch. Dist.*, 143 F.3d 679 (2d Cir. 1998).

In *Jeffries*, two university officials ("Harleston" and "Reynolds") arranged for a Board of Trustees vote on whether to limit the plaintiff's term as department chair after the plaintiff gave a controversial speech. *Jeffries*, 52 F.3d at 11. After the Board of Trustees passed the proposal and the plaintiff sued, a jury found that at least nine of the Board members had voted with legitimate motives, but that as many as six other defendants—including the non-voting defendants Harleston and Reynolds—had acted with invidious intent. *Id.* at 11, 14. The Second Circuit held that although "Harleston and Reynolds were instrumental in putting the [relevant] issue on the Board's agenda, and may indeed have done so to punish [plaintiff], the nine votes based on

10

legitimate grounds constitute a superseding cause breaking the causal chain between the tainted motives (of Harleston and Reynolds) and the decision to limit [plaintiff's] term." *Id.* at 14. The court based this finding on the conclusion that there is "no reasonable possibility that the six [relevant] defendants tainted the vote with whatever retaliatory motives they may have had." *Id.*

In *Taylor*, a school principal reported a complaint that a teacher had physically abused a student, and other administrators independently decided to conduct an investigation, file disciplinary charges, and suspend the plaintiff. *Taylor*, 143 F.3d at 681-84. The Second Circuit found that "the independent investigations of the incidents . . . and the other events culminating in the decision of the disciplinary hearing panel to suspend [plaintiff] constitute a superseding cause of [the defendant's] injury, breaking the causal link between any racial animus [the school principal] may have had and the suspension." *Id.* at 687. After noting that the defendant "did not exercise any discretionary authority" in reporting the complaint of physical abuse and did not play any role in the decision to investigate, file charges, or suspend the plaintiff, the Court found that there was "no basis for concluding that any ill motives [the school principal] may have had impacted the decision to suspend [plaintiff]." *Id.* at 682, 687-88.

In this case, unlike in *Jeffries* and *Taylor*, the Individual Defendants' animus, to the extent it existed, could well have impacted the Board's decision to terminate Plaintiff. The record indicates that Chief Bethencourt exercised his discretion in placing Plaintiff on administrative leave, issuing disciplinary charges against her, and suspending her without pay, and that Chief Bethencourt testified at Plaintiff's disciplinary hearing. (Nicaj Aff. Exs. 44, 47, 65). Sergeant Khalil also testified at Plaintiff's disciplinary hearing. (*Id.* Exs. 65, 67; Smith Aff.[6] Exs. 34-35). Moreover, the Board's decision to terminate Plaintiff was based in large part on

---

[6] Refers to Alex Smith's Affidavit in Support. (Docket No. 49).

prior incidents involving Sergeant Khalil, and related discipline, and the conclusion that Plaintiff "continue[d] to have difficulty following lawful orders of a superior officer," *i.e.*, Sergeant Khalil. (Smith Aff. Ex. 32 at 17). If the Individual Defendants acted with discriminatory or retaliatory animus in issuing the prior discipline, and the Board relied on that discipline and/or misleading testimony in making its decision to terminate Plaintiff, then the Board's decision would not necessarily break the causal chain between the Individual Defendants' animus and Plaintiff's termination. *Cf. Hernandez v. Wells*, No. 01 Civ. 4376MBM, 2003 WL 22771982, at *10 (S.D.N.Y. Nov. 24, 2003) ("Because the jury could reasonably conclude that defendant Wells' misleading information influenced the [Division of Parole] decision to issue a parole hold, that decision does not necessarily constitute an intervening act of independent judgment that breaks the chain of causation.").

Based on this record, the Court finds that Sergeant Khalil and/or Chief Bethencourt may be held liable for Plaintiff's termination to the extent a jury finds that the Board's vote was a reasonably foreseeable consequence of Sergeant Khalil and/or Chief Bethencourt's actions. *See Taylor*, 143 F.3d at 688 ("a defendant may be held liable for 'those consequences attributable to reasonably foreseeable intervening forces, including the acts of third parties.'") (quoting *Warner v. Orange County Dep't of Prob.*, 115 F.3d 1068, 1071 (2d Cir. 1997)).

### D. The Weight of the Board's Decision to Terminate Plaintiff

Defendants also make the slightly different argument that Plaintiff has not presented sufficient evidence to overcome the weight of the Board's decision to terminate Plaintiff. (Motion at 17-18). Defendants cite *Collins v. New York City Transit Auth.*, 305 F.3d 113 (2d Cir. 2002) and *Roemer v. Bd. of Educ. of City of New York*, 150 F. App'x 38, 39 (2d Cir. 2005) (summary order) in support of this proposition.

In *Collins*, the plaintiff was terminated from his job after allegedly assaulting his immediate supervisor. *Collins*, 305 F.3d at 116-117. He challenged his termination through his collective bargaining agreement's multi-step grievance procedure that ended in binding arbitration. *Id.* at 115-17. An arbitration board held a three-day hearing, received evidence, and issued an opinion upholding the plaintiff's termination. *Id.* at 119. In analyzing the plaintiff's claim that he was terminated for discriminatory or retaliatory reasons, the Second Circuit noted that the plaintiff did "not suggest that the arbitration board was not a fully independent and unbiased decisionmaker" and that "there [wa]s no claim that the arbitration board 'rubber-stamped' the recommendations of [plaintiff's] supervisors." *Id.* at 118-19. Thus, the court found that plaintiff's "termination occurred . . . only after a decision, based on substantial evidence, of an undisputedly independent, neutral, and unbiased adjudicator that had the power to prevent the termination." *Id.* at 119. The Second Circuit went on to hold that "a decision by an independent tribunal that is not itself subject to a claim of bias will attenuate a plaintiff's proof of the requisite causal link" between an employee's termination and the employer's illegal motive, and that where "that decision follows an evidentiary hearing and is based on substantial evidence, the Title VII plaintiff, to survive a motion for summary judgment, must present strong evidence that the decision was wrong as a matter of fact—e.g. new evidence not before the tribunal—or that the impartiality of the proceeding was somehow compromised." *Id.* at 119.

Here, Defendants argue that the Board's decision to terminate Plaintiff was also "made by 'an independent tribunal' that is 'not itself subject to a claim of bias.'" (Motion at 17). In so doing, Defendants quote a portion of the Opinion in which the Court dismissed Plaintiff's Section 1983 claims against the Board members and stated that "[t]he record is devoid of any evidence, circumstantial or otherwise, that the Board members . . . acted with any discriminatory

purpose in terminating Plaintiff." (Opinion at 46). The Court finds Defendants' argument unpersuasive. First, the Second Circuit has clarified that "*Collins* addresses only the effect of arbitration awards under a collective bargaining agreement," *Cortes v. MTA New York City Transit*, 802 F.3d 226, 228 (2d Cir. 2015), and Defendants cite no case law indicating that the same standard should apply outside of the arbitration context. Second, the Court finds that, unlike the arbitration board in *Collins*, the Board here is not an "undisputedly independent, neutral, and unbiased adjudicator." *Collins*, 305 F.3d at 119. Notably, Chief Bethencourt acts as the Secretary and Treasurer of the Board and attends monthly Board meetings. (City of Middletown Charter[7] § 128; DeStefano Dep.[8] at 16). Further, the Board is responsible for: appointing the chief of police and all police officers; enacting, modifying and repealing orders, rules and regulations for the government and discipline of the police department; and punishing police officers for neglect of duty, violation of any rules or regulations, or disobedience of any orders. (City of Middletown Charter § 129). The fact that the Court found no evidence that the Board members acted with a discriminatory or retaliatory intent does not translate into a finding that the Board is an "independent tribunal" similar to an arbitration board.[9]

In the second case cited by Defendants, *Roemer v. Bd. of Educ. of City of New York*, 150 F. App'x 38, 39 (2d Cir. 2005) (summary order), the Second Circuit held in a summary order that a finding by an administrative panel that the plaintiff was terminated for cause "rebuts any claim that [plaintiff's] discharge was executed in retaliation for the exercise of any First

---

[7] Nicaj Aff. Ex. 49.

[8] Refers to the deposition of former defendant Mayor Joseph DeStefano taken in this action. (Nicaj Aff. Ex. 73).

[9] Additionally, unlike the plaintiff in *Collins*, Plaintiff does question the neutrality of the Board and in fact stated both before and during the hearing that the Board "was potentially biased and should appoint an impartial hearing officer to conduct the hearing and to report recommendations to the [Board] for its consideration." (Smith Aff. Ex. 32 at 3, 8).

Amendment right to utilize the grievance process" in plaintiff's collective bargaining agreement. *Roemer*, 150 F. App'x at 39-40. *Roemer* is a non-binding case concerning collateral estoppel that has been contradicted by at least one subsequent Second Circuit summary order. *See Broich*, 462 F. App'x at 46 n.4 ("The District Court also erred in concluding that the hearing officer's determination substantiating the charges brought against [plaintiff] 'rebut[s] any claim by plaintiff that charges were preferred and pursued [and] that he was placed on administrative leave and suspended for a retaliatory purpose.' That the [police department] had sufficient justification to bring charges against [plaintiff] does not resolve the question of whether they would in fact have brought the charges in the absence of retaliatory animus.") (second and third alterations in original) (citing *DeCintio*, 821 F.2d at 115, 116 n.8).

Therefore, the Court's ruling stands.

### E. Plaintiff's Comparators

Finally, Defendants argue that none of Plaintiff's comparators support her gender discrimination claims because none is similarly situated to Plaintiff in all material respects. (Motion at 18-22). In particular, Defendants assert that: (i) Comparator One, Comparator Two, and Comparator Three each accepted his discipline and did not proceed with a disciplinary hearing; (ii) Comparator One and Comparator Two apologized for their misconduct; (iii) Comparator Two received a more serious disposition because that disposition contained a warning that further acts of misconduct would result in the Board seeking to terminate Comparator Two's employment; and (iv) Comparator Three had been shot in the line of duty and Defendants believed he was suffering from PTSD. (*Id.*).

In support of their arguments, Defendants do not cite any controlling decisions or factual matters that the Court overlooked. Instead they merely cite non-binding case law and rehash

arguments that the Court has already considered and rejected. As the Court noted in its Opinion, "[w]hether two employees are similarly situated ordinarily presents a question of fact for the jury." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). Therefore, the Court will not disturb its previous ruling.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion for reconsideration is denied. The Clerk is respectfully requested to terminate the pending motion (Docket No. 85).

Dated:   August 4, 2016
         White Plains, New York

                                        **SO ORDERED:**

                                        _____
                                        JUDITH C. McCARTHY
                                        United States Magistrate Judge